## MATTER OF LEVEQUE

### In Deportation Proceedings

### A-13823892

*Decided by Board February 29, 1968*

Notwithstanding respondent's statutory eligibility for adjustment of status under section 245, Immigration and Nationality Act, as amended, when she first applied for such relief in May 1965, the Service is not now estopped from urging ineligibility because of inability to meet the labor certification requirements of section 212(a)(14) of the Act as imposed by the Act of October 3, 1965, where the hearing was adjourned for necessary character investigation and processing of the application was not completed until after the effective date of the amendatory act at which time she was subject to and unable to meet the labor certification requirement, and where there was no lack of due diligence by the Service in the adjudication of the application.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer.

ON BEHALF OF RESPONDENT:
Albert J. Geduldig, Esquire
84 William Street
New York, New York 10038

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Respondent appeals from a decision of the special inquiry officer, finding her statutorily ineligible for adjustment of status under section 245, and granting voluntary departure with an alternate order of deportation to Brazil and a designation of France if Brazil should refuse to accept her.

Respondent is a 44-year-old divorced female alien, native and citizen of France, who was last admitted to the United States in 1962 as a visitor for pleasure; her stay, with extensions, expired on October 27, 1963, and she remained beyond that date without authority.

Respondent conceded deportability on the charge in the order to show cause at the first hearing and requested an adjournment to permit her to prepare and submit an application for adjustment of status. The application was submitted at the adjourned hearing on May 13, 1965, but because documentation was incomplete there was a further adjournment to June 16, 1965.

At the June hearing, respondent was questioned by the trial attorney on matters for the most part relevant to her eligibility for adjustment, with special emphasis on the facts surrounding her divorce, granted in France in 1962. The document evidencing it was not a court record but a certificate by the Mayor of the community where she and her husband had lived, and it stated that the divorce had been procured by the husband "for the exclusive fault of the wife." Respondent denied that there had been any fault on her part, and denied any knowledge of what fault had been alleged, claiming that she had never been served with a complaint, had never appeared in the action, and did not even know it had taken place until some time after it was completed. It was agreed that counsel should attempt to obtain and submit a copy of the complaint in the divorce action.

At the same hearing, it was elicited by the trial attorney that respondent had recently undergone a hysterectomy (Tr. p. 17); the trial attorney wished to ascertain the cause for the surgery and requested that a copy of the hospital record be submitted. Counsel objected, and the special inquiry officer made no definite ruling on the request. The hearing was adjourned to July 23, 1965 to permit the trial attorney to complete his questioning of respondent, on her eligibility for adjustment.

The hearing was not resumed until November 17, 1965. At that time, counsel stated that in spite of considerable effort he had been unable to obtain a copy of the complaint in the divorce action. There was then extensive questioning of respondent, during which she repeatedly denied having had relations with other men during her marriage, denied that she had ever engaged in prostitution, and denied having had sexual relations with men after her divorce. At the close of the questioning, the special inquiry officer declared the hearing completed, with the understanding that counsel would submit a medical certificate concerning the surgery, which would become Exhibit 8; that respondent would appear for examination by the United States Public Health Service when notified to do so and the report thereof would be entered into evidence as Exhibit 9; and that the Government would conduct a further investigation of respondent which was to be entered into evidence as Exhibit 10 without a reopened hearing, provided it showed nothing adverse to respondent; if there was adverse material, the hearing would be reopened on notice. Counsel consented that if the special inquiry officer's decision authorized adjustment, no copy of it need be served upon him, and he would waive the right to appeal.

A year and a half later, on June 21, 1967, the hearing was reopened by action of the special inquiry officer, for compliance with the provisions of section 212(a)(14) of the Immigration and Nationality

Act, as amended by the Act of October 3, 1965. During the course of this hearing, the hospital record was introduced (showing that the operation was performed to remove a malignancy), as was a copy of the court clerk's minutes in the divorce action (obtained by the trial attorney), showing that respondent had never been served with the complaint, her whereabouts allegedly being unknown, and that adultery was in no way involved. Counsel requested an adjournment in order to attempt to obtain a labor certification or to establish that respondent was exempt from the requirement for it, and the hearing was adjourned to September 26, 1967. At this final hearing, counsel advised that respondent did not have a labor certification and would not be able to obtain one. The special inquiry officer then rendered the oral decision being appealed from.

Counsel urges that the Government should be estopped from denying adjustment to respondent, in spite of the absence of a labor certification, on two grounds: first, that its lack of due diligence in conducting its investigation, and overzealousness in looking for nonexistent bad conduct, prevented the case from being processed to completion before the effective date of the Act of October 3, 1965; and, second,

* * * there was an obligation at the time the hearing was held on November 13 (sic), 1965, and the special inquiry officer was obliged to suggest that a Labor Department certification would be necessary after December 1, 1965. Nothing was mentioned about that. If he had mentioned it, I perhaps would have insisted that this case be granted or that a decision be made, because the lady in question is a manicurist, and she will never be able to obtain a Labor Deprtment certification * * *.

Estoppel against an agency of the United States Government is not to be lightly undertaken (cf. *Matter of Talanoa*, Int. Dec. #1770, and cases cited in footnote 1 thereof). In any estoppel claim, there must be something more than a mere showing that the party seeking it has been damaged by a particular course of action or by a failure to act within a certain time period. The action or inaction complained of must be inconsistent with the position initially taken by the party sought to be estopped, or must be shown to be a breach of some duty owing by that party; it must be shown that that party, by such action or failure to act or silence, led the other party, in reliance thereon, to act or fail to act in such a way as to cause loss or injury that would not otherwise have occurred.

Turning to the second claimed estoppel ground, that the special inquiry officer at the November 17th hearing was under an obligation to advise counsel that the labor certification requirement would go into effect on December 1, 1965, we cannot agree that this can form a basis for estoppel. The Act of October 3, 1965 was a public law,

635

signed by the President of the United States at the foot of the Statue of Liberty. Its text was readily available. The regulations to implement the new law were first published in the Federal Register of November 4, 1965 (Vol. 30, No. 214, p. 13962) in the form of a Notice of Proposed Rule Making, and were as available to counsel as they were to the special inquiry officer. The information counsel claims was improperly not imparted to him was not something which counsel could obtain only from the special inquiry officer or the trial attorney. While it might perhaps have been helpful if the special inquiry officer had reminded counsel of the changes about to go into effect, he was under no duty to do so, and, in legal contemplation, respondent was not damaged by this omission.

On the first mentioned ground, it does appear that a great deal of investigation was proposed, which resulted in finding none of the material apparently anticipated by the Government. Also, the file does not contain the investigative report which was stipulated to become Exhibit 10. However, we cannot, on the record before us, say that it was improper for the Service to attempt to learn definitely, for example, the real basis for the divorce, which respondent's own document had indicated to have been granted "for the exclusive fault of the wife". Respondent was applying for discretionary relief, and clarification of any point that would logically have a bearing on her good moral character was proper and justified. Nor has it been shown that the Service did not exercise due diligence in its processing of this case. It is not uncommon for special inquiry officers where an application for adjustment has been made in deportation proceedings to wait until all of the facts on statutory eligibility and worthiness for discretionary relief have been developed, before sending the case to the appropriate section for the processing normally incident to an application for adjustment. In this case, the special inquiry officer did not consider the hearings completed until November 17th, 1965, thirteen days before the effective date of the new Act. It is doubtful that the case could have been processed by December 1, 1965 with even the most diligent effort by the Service, in view of the numerous reports, agency checks, medical examination, etc. that would have to be obtained before final approval could be given.

Respondent, who was eligible for the relief sought when she first applied for it, became ineligible by virtue of the change in the law, and her inability to obtain a labor certification. It is well settled that where an application for discretionary relief has been made, and there is a change in the law after the application is filed, but before it has been granted, the new law is controlling, even if it results in a loss of eligibility by the applicant; see *Patsis* v. *Immigration and Naturaliza-*

636

*tion Service*, 337 F. 2d 733 (8th Cir., 1964), cert. den. 360 U.S. 952 (1965), reh. den. 381 U.S. 921 (1965); *Foti* v. *Immigration and Naturalization Service*, 332 F. 2d 424 (2d. Cir., 1964); *Fassilis* v. *Esperdy*, 301 F.2d 429 (2d Cir., 1962).

On the record before us, we cannot hold that the failure to process and adjudicate respondent's application for adjustment before December 1, 1965 is attributable to any improper act or lack of due diligence on the part of the Service, or that it has been established that a sufficient basis to invoke estoppel exists.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.